IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FAMILY OF CARE REAL ESTATE      :
HOLDING CO., INC., et al.      :

    v.        :  Civil Action No. DKC 23-0574

      :

CHAPMAN PROPERTY, LLC      :

      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case involving a disputed sale of a nursing home are the motion to dismiss the First Amended Complaint filed by Defendant Chapman Property, LLC, (ECF No. 21), the motion to dismiss Defendant's counterclaim filed by Plaintiffs Family of Care Real Estate Holding Co., Inc., and Charles County Nursing and Rehabilitation Center, Inc., (ECF No. 28), and the motion for leave to amend filed by Plaintiffs, (ECF No. 31).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Plaintiffs' motion for leave to amend will be granted in part and denied in part, and both motions to dismiss will be denied.

**I. Background**

Plaintiffs filed this lawsuit in the Circuit Court for Charles County, Maryland, and Defendant removed the case to this court on March 2, 2023.  (ECF No. 1).  Plaintiffs filed a First Amended

Complaint on March 13, 2023,[1] (ECF No. 17), which alleges the following facts.

Plaintiffs are corporations that own and operate a skilled nursing facility located in La Plata, Maryland, currently doing business under the name "Sagepoint Senior Living Services" (the "Facility"). (*Id.* ¶¶ 3-4, 6). The Facility is located on a more than sixteen-acre property on which Plaintiffs also operate an assisted living facility and adult daycare, which are not included in the sale that is the subject of this lawsuit. (*Id.* ¶¶ 6-7). On May 6, 2022, Plaintiffs entered into a letter of intent for the sale of the nursing home to Tryko Partners and Marquis Health Consulting Services, LLC ("Marquis"). (*Id.* ¶ 6). The letter of intent provided for a purchase price of $28,200,000 and described the property to be purchased (the "Property") as follows: "the Facility is situated on an unsubdivided part of a 16.82+/- acre

---

[1] Plaintiffs had filed a motion for a temporary restraining order and preliminary injunction ("TRO Motion") on March 3, 2023, based on their original state court complaint. (ECF No. 6). The filing of the First Amended Complaint, drastically changing the nature of Plaintiffs' claims, appears to moot that motion. Plaintiffs also filed a motion to seal their TRO Motion and the exhibits attached thereto. (ECF No. 7). However, they filed under seal the motion to seal itself. This court's local rules provide that a motion to seal must be "entered on the public docket to permit the filing of objections by interested parties." Local Rule 105.11. Thus, the motion to seal cannot be granted. Given the mootness of the underlying motion, Plaintiffs will be given an opportunity to withdraw the motions and exhibits, and they will no longer be accessible in the electronic file. Failing that, the motion to seal will be unsealed, and appropriate consideration of the motions will follow.

campus owned by [Plaintiff Family of Care Real Estate Holding Co., Inc.].   The personal property on the Facility is owned by [Plaintiff Charles County Nursing and Rehabilitation Center, Inc.]." (*Id.* ¶ 7).

After more than four months of negotiation, Plaintiffs, Tryko Partners, and Marquis entered into an Asset Purchase Agreement (the "APA"), dated September 12, 2022, with Tryko Partners and Marquis designating Defendant as the entity that would take title to the Property.  (*Id.* ¶ 5-6, 10, 10 n.1).  The APA provided for multiple possible closing dates, with the latest possible closing date being February 1, 2023.  (*Id.* ¶ 12).  The APA required that Defendant identify any service contracts it wished to assume by October 12, 2022.  (*Id.* ¶ 14).  Before closing, Plaintiffs were required to "obtain approval for a condominium regime" under which Defendant was to operate the nursing home facility, and the documents governing the condominium regime (the "Condominium Agreements") needed to be "agreed to by the parties." (*Id.* ¶¶ 19-21).

Plaintiffs provided drafts of the Condominium Agreements to Defendant in October 2022, but due to Defendant's delays in providing comments on the drafts, Plaintiffs were unable to fulfill their obligation to obtain approval for the condominium regime. (*Id.* ¶¶ 23-25).  Defendant also did not timely identify the service contracts it wished to assume.   (*Id.* ¶ 26).   Additionally,

Defendant "made statements, both verbally through its principals and also in writing, that it would be unable to fund the purchase price set forth in the APA." (*Id.* ¶ 27). In January 2023, Defendant represented that it would be unable to close on the transaction by February 1. (*Id.* ¶ 28). Based on those statements, on January 11, 2023, Plaintiffs asked Defendant to confirm in writing that it could both fund the agreed-upon purchase price and timely close. (*Id.* ¶ 29). Defendant did not do so. (*Id.* ¶ 30).

Plaintiffs believed that Defendant "made a definite repudiation of [its] obligations of the APA and subsequently terminated the APA on January 24, 2023." (*Id.* ¶ 31). Thereafter, the parties engaged in negotiations to reinstate and amend the APA. (*Id.* ¶ 32). On February 10, 2023, Plaintiffs accepted Defendant's offer in writing to reinstate the APA based on amended terms outlined in the parties' emails. (*Id.* ¶ 33). Nevertheless, Defendant subsequently refused to execute a version of the APA that Plaintiffs prepared in accordance with the agreed-upon terms, and Defendant continued to request additional terms. (*Id.* ¶¶ 35, 37). Plaintiffs then commenced this litigation.

The First Amended Complaint contains three claims: two claims for breach of contract (anticipatory breach and breach of material terms) and one claim seeking declaratory judgment. (*Id.* ¶¶ 38-48). Specifically, the First Amended Complaint alleges that Defendant anticipatorily breached the APA by stating that it could

4

not fund the purchase price and could not close on February 1, 2023, and that it breached the APA by failing to identify contracts it wished to assume.  (*Id.* ¶¶ 39, 42).  They seek an order finding that Defendant breached the APA, prohibiting Defendant from seeking specific performance to compel Plaintiffs to perform any further obligations under the APA, and ordering the release of the entire deposit of $1,350,000 to Plaintiffs.  (*Id.* ¶¶ 40, 44).  In the alternative, they seek a declaratory judgment that the parties "never formed an enforceable purchase contract, due to their failure to agree to material terms such that there was no meeting of the minds as to the condominium covenants or identification of the real property to be conveyed to" Defendant.  (*Id.* ¶ 46).

Defendant filed three breach of contract counterclaims against Plaintiffs: the first alleges that Plaintiffs breached the APA and requests as relief specific performance of the APA; the second alleges that Plaintiffs anticipatorily breached the APA; and the third alleges that Plaintiffs breached a "side agreement" wherein Plaintiffs agreed to reinstate the APA in exchange for Defendant releasing $400,000 from the deposit's escrow account. (ECF No. 22 ¶¶ 54-71).  Additionally, Defendant filed notice of a *lis pendens* for the entire property of more than sixteen acres. (*Id.* ¶ 1).

Defendant filed a motion to dismiss the First Amended Complaint for failure to state a claim.  (ECF No. 21).  Rather

than respond to the motion, Plaintiffs moved for leave to file a second amended complaint, noting that if the court were to grant their motion, it would moot Defendant's motion to dismiss.  (ECF Nos. 26, 31).  Plaintiffs also moved to dismiss Defendant's first breach of contract counterclaim for failure to state a claim.  (ECF No. 28).  Defendant filed responses in opposition to both of Plaintiffs' motions, and Plaintiffs replied to both responses. (ECF Nos. 32, 39, 40, 43).

## II. Standard of Review

Fed.R.Civ.P. 15 provides that a party may amend its pleading once as a matter of course within a certain amount of time after serving it and, "[i]n all other cases, . . . only with the opposing party's written consent or the court's leave."  Fed.R.Civ.P. 15(a). The rule adds, however, that "[t]he court should freely give leave when justice so requires."  *Id.*  Indeed, leave to amend a complaint should be liberally granted unless there is a specific reason not to do so, such as where the amendment would be futile because "the proposed amended complaint fails to satisfy the requirements of the federal rules," including Rule 12(b)(6).  *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (internal quotation marks omitted).

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.

2006).  A complaint need only satisfy the standard of Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must include more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Indeed, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

In evaluating a 12(b)(6) motion, the court must consider all well-pleaded allegations in the complaint as true.  *See Albright v. Oliver*, 510 U.S. 266, 268 (1994).  The court is not, however, required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).  The court may not resolve questions of fact or rule on the merits of a claim at this posture.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  The court may only consider the complaint, documents attached to the complaint, documents explicitly incorporated into the complaint by reference, and documents integral to the complaint where there is no dispute as to the documents' authenticity. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

## III. Analysis

### A. Motion for Leave to Amend

Plaintiffs' proposed Second Amended Complaint contains additional factual allegations regarding the parties' obligations under the APA and Defendant's failure to uphold its obligations, and it adds new claims against Defendant. (ECF No. 31-6). It also adds new parties, claims against those parties, and factual allegations to support those claims.[2] The claims and parties in the proposed Second Amended Complaint, including those carried over from the First Amended Complaint, are Count I: breach of contract claim against Defendant based on Defendant's alleged anticipatory breach of the APA; Count II: breach of contract claim against Defendant based on Defendant's alleged material breach of the APA; Count III: claim for declaratory judgment against Riverside Abstract, the "Escrow Agent," for release of the deposit to Plaintiffs; Count IV: claim, in the alternative to Counts I and II, for declaratory judgment against Defendant to rescind the APA;

---

[2] The proposed new parties are Mindee Posen and Marquis. The former is identified as a "resident" of New Jersey, and the latter is a limited liability company formed under New Jersey law. Its members and their states of citizenship are not identified. Count III purports to be against "Defendant Riverside Abstract," and that entity is included in the caption, but it is not identified in the "parties" section of the proposed Second Amended Complaint. Nor does the proposed Second Amended Complaint describe the type of entity or its states of citizenship. Because leave to amend will be denied as to the new claims against these proposed new parties, it will not be necessary for Plaintiffs to clarify these matters.

Count V: claim for declaratory judgment against Defendant to nullify the notice of *lis pendens*; Count VI: claim for violation of the Maryland Unfair or Deceptive Trade Practices law based on Defendant's maintenance of a public website advertising that Defendant was providing post-acute care services at the Property; Count VII: claim for tortious interference with prospective economic relationships against Defendant and Mindee Posen, one of Defendant's Principals, based on that same website; and Count VIII: claim for slander of title against Defendant based on its filing of the "overbroad" notice of *lis pendens*.[3]

Defendant argues that Plaintiffs' proposed amendments would be futile because none of the claims in Plaintiffs' proposed Second Amended Complaint—including those carried over from the First Amended Complaint—would withstand a motion to dismiss under Rule 12(b)(6). (ECF No. 40, at 2). Defendant also argues that allowing Plaintiffs to amend their complaint a second time would be prejudicial. (*Id.* at 6). Generally, whether an amendment is prejudicial is "determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). For

---

[3] Some of these proposed new claims may involve events that occurred after the filing of the First Amended Complaint, which would make Plaintiffs' motion both a motion to amend and to supplement the First Amended Complaint. *See* Fed.R.Civ.P. 15(d). This is a distinction without a difference, however, because motions to supplement are analyzed using the same standard as motions to amend. *See Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002).

example, amendments that significantly change the nature of the case shortly before trial are often considered prejudicial, while amendments before discovery that merely add additional theories of recovery to facts already pleaded are not. *See id.* Because this case is in its very early stages and the proposed amendments do not significantly change the nature of the case, which would still be primarily about the existence and contents of an agreement between the parties, Plaintiffs' proposed amendment would not be prejudicial.  The viability of each proposed claim will be discussed in turn.

### 1. Breach of Contract (Anticipatory Breach)[4]

Defendant contends that Plaintiffs have not plausibly alleged that Defendant anticipatorily breached the APA through its statements prior to February 1, 2023. (ECF No. 40, at 7-8).  The proposed Second Amended Complaint alleges that Defendant "made

---

[4] Plaintiffs argue that the court should not address Defendant's arguments regarding the futility of the claims that were included in the First Amended Complaint because those arguments are not properly raised in response to a motion to amend the First Amended Complaint and should be raised only in a motion to dismiss.  (ECF No. 43, at 3).  The proposed Second Amended Complaint does, however, include slight changes to the claims carried over from the First Amended Complaint, and it includes changes to the factual allegations that apply to all claims.  It is necessary to consider whether those changes would be futile, which would be the case if, as Defendant argues, the underlying claims could not survive a motion to dismiss.  Defendant did file a motion to dismiss the First Amended Complaint, (ECF No. 21), which will be moot if leave to amend is granted.  Thus, it is appropriate to assess the futility of the claims that carried over from the First Amended Complaint along with the new claims.

statements, both verbally through its principals and also in writing, that it would be unable to fund the purchase price set forth in the APA" and "that it would be unable to timely close on the transaction on the required closing date of February 1, 2023." (ECF No. 31-6, ¶¶ 38-39). Defendant argues that neither of those statements amount to a "definite, specific, positive, and unconditional repudiation of the contract," as is the standard for an anticipatory breach of contract under Maryland law. *See C. W. Blomquist & Co. v. Cap. Area Realty Invs. Corp.*, 270 Md. 486, 494 (1973); (ECF No. 40, at 8).

The Supreme Court of Maryland has recognized that while "the expression of a doubt as to whether the ability to perform in accordance with the contract will exist when the time comes[] is not a repudiation," "[a] statement of inability to perform . . . may be so made as to justify the other party in understanding it as a definite repudiation." *Id.* at 495 (quoting 4 *Corbin on Contracts*, § 974 (1951)). Taking Plaintiffs' allegations as true that Defendant expressed an inability to perform its obligations under the APA—that is, an inability to pay the purchase price and to close on the transaction by February 1, 2023—Plaintiffs have stated a plausible claim for anticipatory breach of contract.

Defendant argues that Plaintiffs' statements are mere conclusions because they have failed to attach any exhibits demonstrating the statements Defendant allegedly made in

11

repudiation of the contract.  (ECF No. 40, at 8).  But a plaintiff is not required to plead evidence or prove its case at the motion to dismiss stage.  Alleging that a statement was made is enough, and the court must accept the allegation as true.

Defendant also relies on its statement in its January 18 letter to Plaintiffs that it "remains willing to work through these issues and negotiate in good faith to ensure the transaction closes."  (*Id.* at 9).  This communication was referenced in the proposed Second Amended Complaint and attached as an exhibit to Defendant's response in opposition to Plaintiffs' motion to amend.  (ECF Nos. 31-6, ¶ 42; 40-3).  Assuming this letter is incorporated into the proposed Second Amended Complaint by reference, it does not defeat Plaintiffs' claim.  Defendant's statement that it was "willing to work through . . . issues and negotiate" does not foreclose a finding that Defendant had repudiated the prior agreement and simply meant it was willing to negotiate a new agreement.  (ECF No. 40-3, at 3).  The letter also states that Defendant "never stated any inability to perform [its] Closing obligations nor has it stated its inability to fund the acquisition," but it goes on to clarify that Defendant's prior statements had communicated its "need for the request for a purchase price reduction."  (*Id.* at 2).  Thus, the letter does not make it implausible that, as Plaintiffs allege, Defendant stated that it would not honor the agreed-upon purchase price and that

12

Plaintiffs could consider that statement to be an anticipatory breach.  Additionally, Defendant's efforts in this litigation to enforce the APA do not, as Defendant suggests, make it implausible that it previously sought to renege on the purchase at the agreed-upon price.

Plaintiffs' proposed Second Amended Complaint states a plausible claim for relief in Count I.  Therefore, it would not be futile for Plaintiffs to amend their complaint as to that claim.

### 2. Breach of Contract (Material Breach)

Defendant argues that Plaintiffs' proposed amendments as to Count II would be futile because they fail to allege any material breach of the APA.  Count II of the proposed Second Amended Complaint alleges that Defendant materially breached the APA by failing to identify contracts that it wished to assume "after affirmatively promising that it would adopt certain contracts and then failing to do so."  (ECF No. 31-6, ¶ 79).  Plaintiffs also allege that Defendant breached the APA through its "constant and continual delays and frustration of" Plaintiffs' ability to perform its obligations under the APA, which the parties interpret in their filings as referring to Plaintiffs' obligation to obtain approval for a condominium regime.  (*Id.* ¶ 80).  Plaintiffs allege that Defendant's actions, or lack thereof, breached the terms of the APA as well as the "covenant of good faith and fair dealing inherent in the APA."  (*Id.* ¶ 81).

13

Generally, a breach of contract is defined as "a failure without legal excuse to perform any promise which forms the whole or part of a contract." *String v. Steven Dev. Corp.*, 269 Md. 569, 579 (1973) (internal quotation marks omitted).  A breach is "material" when "the act failed to be performed [goes] to the root of the contract or [is] in respect to matters which would render the performance of the rest of the contract a thing different in substance from that which was contracted for." *Traylor v. Grafton*, 273 Md. 649, 687 (1975).  Whether a breach is material is usually "a question of fact; but the question in a particular case may be so clear that a decision can properly be given only one way, and in such a case the court may properly decide the matter as if it were a question of law." *Speed v. Bailey*, 153 Md. 655, 661-62 (1927) (quoting *Williston on Contracts*, § 866).

The APA, which is incorporated by reference into the proposed Second Amended Complaint, states that Defendant "shall have no obligation to assume any of the service or maintenance contracts . . . which relate to the Property or the Facility and will notify [Plaintiffs] of the Service Contracts that it wishes to assume at least thirty (30) days following the" APA's effective date. (ECF Nos. 2-4, at 10; 40-1, at 10).  Because Defendant had "no obligation" to assume any service contracts, its failure to do so cannot be a material breach of the APA.  Plaintiffs' allegation that Defendant affirmatively promised that it would adopt certain

14

service contracts but then failed to follow through does not solve this problem.   Regardless of Defendant's extrinsic promises or representations to Plaintiffs, the APA is clear that Defendant had "no obligation" to assume any service contracts.   Therefore, Defendant's failure to do so could not constitute a breach—much less a material breach—of the APA.

The same defect exists in Plaintiffs' allegation that Defendant breached the APA through its delay and refusal to provide feedback and approval regarding Plaintiffs' proposed Condominium Agreements.   While the APA requires that the parties agree on the condominium documents, it does not set a timeline for Defendant to respond to Plaintiffs' proposals regarding the condominium regime, nor does it require Defendant to approve Plaintiffs' proposals. (ECF Nos. 2-4, at 24; 40-1, at 24).   Indeed, as Defendant points out, the APA provides for an extension of the closing date in the event that the parties are unable to come to an agreement on the condominium regime by the original closing date.   (ECF Nos. 2-4, at 8; 40-1, at 8).   Thus, the proposed Second Amended Complaint does not identify any specific terms in the APA that Defendant allegedly breached through its delays in providing feedback on the Condominium Agreements.

While the proposed Second Amended Complaint does not state a plausible claim for breach of the terms of the APA, it does state a plausible claim that Defendant's actions constituted a breach of

the implied duty of good faith and fair dealing.  Maryland courts have recognized that every contract "gives rise to an implied duty of good faith and fair dealing." *Blondell v. Littlepage*, 413 Md. 96, 113 (2010).  This duty only "concerns the performance and enforcement of the contract itself," and it "does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under [the contract]."  *Id.* at 113-14 (alterations in original) (internal quotation marks omitted).  It does, however, "prohibit[] one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract."  *Id.* at 114 (internal quotation marks omitted).

Although the APA does not require Defendant to assume any service contracts or to provide feedback or approval regarding the Condominium Agreements within a certain timeframe, it could be determined that Defendant breached its duty of good faith and fair dealing by failing, as Plaintiffs allege, to respond appropriately to Plaintiffs' repeated requests for comments on the Condominium Agreements drafts and to clarify its "repeated[] and affirmative[] represent[ations]" that it was assuming certain service contracts. It is plausible that Defendant's alleged actions, or lack thereof, prevented Plaintiffs from performing their own obligations under the APA, even if Defendant did not technically breach any terms of the APA.  Thus, to the extent Plaintiffs' proposed amendments

allege a claim based on a breach of the duty of good faith and fair dealing, those amendments would not be futile.[5]  Plaintiffs' motion for leave to amend will be granted as to their breach of the duty of good faith and fair dealing claim but otherwise denied as to Count II.

### 3. Declaratory Judgment against Escrow Agent

Defendant argues that Count III of the proposed Second Amended Complaint fails to state a claim because a declaratory judgment is the incorrect vehicle for Plaintiffs to pursue a claim against the Escrow Agent for failure to release the deposit.  (ECF No. 40, at

---

[5] Defendant also argues that Plaintiffs' claim is barred by their failure to give Defendant notice of the breach and an opportunity to cure it, as is required under the APA.  (ECF No. 40, at 13).  This argument fails, however, because the proposed Amended Complaint alleges that notice of default was provided prior to January 18, 2023, (ECF No. 31-6, ¶ 42), and the January 17, 2023, letter from Plaintiffs to Defendant, attached as an exhibit to the proposed Second Amended Complaint, indicates that Plaintiffs did give notice of and an opportunity to cure the issues involving the service contracts and Condominium Agreements.  (ECF No. 31-5, at 14-15).  In the letter, with the subject line "Notice of Breach of Contract," Plaintiffs wrote,

> Seller hereby notifies Purchaser that it is in breach of the implied covenant of good faith and fair dealing.  Without limitation, Purchaser has acted in bad faith for failure to (i) timely provide comments to multiple drafts of [the Condominium Agreements] [and] (ii) timely fulfill . . . Purchaser's obligations with respect to contracts to be either terminated or assumed[.]

Because this document suggests at the very least that a dispute of fact exists as to whether Plaintiffs gave notice and an opportunity to cure, the claim cannot be dismissed on this basis.

14).   Defendant also argues that because the Escrow Agreement authorizes the Escrow Agent to retain the deposit while a dispute exists between the parties regarding the escrow funds, the Escrow Agent could not have breached the Escrow Agreement by failing to release the deposit while this case is pending.   (*Id.*).

The Declaratory Judgment Act provides that a federal court "*may* declare the rights and other legal relations of any interested party seeking such declaration" if certain conditions are met.   28 U.S.C. § 2201 (emphasis added).   These conditions are "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties . . . ; and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotation marks omitted).

Here, the complaint does not allege a controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*   The Escrow Agreement, which is attached as an exhibit to the proposed Second Amended Complaint, provides:

> In the event . . . there is any dispute between [Plaintiffs] and [Defendant] regarding any disbursement of the Escrow Funds . . . , Escrow Agent shall have the right, but not the obligation to . . . refrain from taking any

18

> action and retain the Escrow Funds in its
> Escrow Account until otherwise directed by a
> final, non-appealable order or judgment of a
> court of competent jurisdiction or by a
> written agreement signed by [Plaintiffs] and
> [Defendant.]

(ECF No. 31-5, at 8).  There is clearly a dispute between the parties regarding the disbursement of the escrow funds; thus, the Escrow Agent has a right under the Escrow Agreement to retain the funds.[6]  Plaintiffs may have a claim against the Escrow Agent if it does not disburse the escrow funds once this lawsuit is resolved, but at this time, there is no justiciable controversy regarding the Escrow Agent's compliance with the Escrow Agreement. Because it would be improper for the court to exercise jurisdiction over Plaintiffs' claim for declaratory judgment against the Escrow Agent, Plaintiffs' proposed addition of this claim would be futile. The motion for leave to amend will be denied as to this claim.

#### 4. Declaratory Judgment to Rescind the APA

Defendant contends that Plaintiffs' claim seeking, in the alternative, a declaratory judgment for rescission of the APA fails because the APA sufficiently identifies the facility and property

---

[6] As Defendant notes, Plaintiffs acknowledged in a March 30, 2023, letter to the Escrow Agent, attached to their proposed Second Amended Complaint, that "there is a dispute regarding the Escrow funds, which is now the subject of pending litigation in the United States District Court for the District of Maryland" and that the Escrow Agreement allows the Escrow Agent to refrain from taking action and retain the funds pending the resolution of the dispute. (ECF No. 31-5, at 1).

to be sold.   (ECF No. 40, at 15).   The Federal Rules of Civil Procedure allow parties to plead claims that are inconsistent with one another, as long as the claims are each supported by sufficient facts to make them plausible.   Fed.R.Civ.P. 8(d)(3); *see also Polar Commc'ns Corp. v. Oncor Commc'ns, Inc.*, 927 F.Supp. 894, 896 (D.Md. 1996).   Based solely on the allegations in the proposed Second Amended Complaint and the documents incorporated therein, it cannot be said that Plaintiffs' alternative theory is implausible. The APA does not identify the property to be sold so clearly that there can be no doubt as to whether there was a meeting of the minds as to that term.   Discovery is needed to answer this factual question.   Thus, Plaintiffs' motion for leave to amend will be granted as to this claim.

### 5. Declaratory Judgment to Nullify *Lis Pendens*

Defendant argues that Plaintiffs' motion to amend should be denied as to their claim seeking a declaratory judgment to nullify the *lis pendens* that Defendant filed because the *lis pendens* appropriately identifies the property that is the subject of the dispute in this case.   (ECF No. 40, at 17-18).   Plaintiffs' claim is that the notice of *lis pendens* is overbroad because it identifies the entire 16.82+/- acre campus, which includes the assisted living facility and adult day care that are not the subject of this lawsuit.   (ECF No. 31-6, ¶¶ 100-104).

The Maryland Rules provide that when "an action [is] filed in a circuit court or in the United States District Court for the District of Maryland that affects title to or a leasehold interest in real property located in" Maryland, a party may file a notice of *lis pendens* in the land records of the county in which the property is located to give "constructive notice of the pending action as to the subject real property located in that county." Md. Rules, Rule 12-102(a)-(b).  The Rules also provide that, "[o]n motion of a person in interest and for good cause, the court in the county in which the action is pending may enter an order terminating the [*lis pendens*] in that county and any other county in which the [*lis pendens*] has been recorded."[7]  Rule 12-102(c).

Rather than move to terminate the *lis pendens*, as provided for by the Maryland Rules, Plaintiffs seek a declaratory judgment that the *lis pendens* is null and void.  As previously noted, declaratory relief is only appropriate where there exists an "actual controversy," and there is no underlying claim here to resolve.  In other words, a motion to terminate a *lis pendens* is not a stand-alone claim.  Because it would be inappropriate to

---

[7] "Although motions to quash a *lis pendens* are more appropriately decided by state courts, there is no doubt that Federal courts may in appropriate cases (typically, diversity cases) entertain and dispose of motions to quash a *lis pendens*." *Meliani v. Jade Dunn Loring Metro, LLC*, 286 F.Supp.2d 741, 744 n.2 (E.D.Va. 2003) (citing *Geris v. Resolution Trust Corp.*, Nos. 94-1095, 94-1603, 1994 WL 525052, at *1 (4th Cir. Sept. 28, 1994)).

exercise jurisdiction over Plaintiffs' claim for declaratory judgment to terminate the *lis pendens*, Plaintiffs' proposal to add this claim would be futile. The motion for leave to amend will be denied as to this claim.

### 6. Maryland Deceptive Trade Practice

Defendant argues that Plaintiffs' proposal to add a Maryland Deceptive Trade Practice claim would be futile. (ECF No. 40, at 19). In their reply, Plaintiffs provide no response to Defendant's arguments and state that, "upon further investigation," they "consent to dismissal" of the claim. (ECF No. 43, at 11). Plaintiffs' motion for leave to amend will be denied as to this claim.

### 7. Tortious Interference with Prospective Economic Relationships

Defendant opposes Plaintiffs' proposal to add a claim for tortious interference with prospective economic relationships because they have failed to allege sufficient facts to support that claim. (ECF No. 40, at 22). In Maryland, it is an actionable wrong for a party to "malicious[ly] interfere[] with the business or occupation of another, if followed by damage." *Willner v. Silverman*, 109 Md. 341, 355 (1909). Thus, the elements of this tort are: "(1) [i]ntentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without

right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Id.*

Plaintiffs allege that Defendant committed tortious interference with their prospective economic relationships by filing an overbroad notice of *lis pendens* and by erecting and maintaining a website in which Defendant claimed that it was providing post-acute care services at the Property that is the subject of this lawsuit. (ECF No. 31-6, ¶¶ 112-14). They do not, however, allege with what "prospective economic relationships" Defendant's actions interfered. Also problematic, they do not allege what damages they suffered from Defendant's actions, beyond a conclusory statement that they "have experienced damages and loss." Thus, Plaintiffs have failed to allege sufficient facts to make their tortious interference claim plausible on its face. Their motion will be denied as to that claim.

### 8. Slander of Title

Finally, Defendant contends that Plaintiffs' proposed claim for slander of title could not survive a motion to dismiss. (ECF No. 40, at 17-19). Slander of title, which is derived from the traditional tort of defamation, is the publication of a falsehood that is "derogatory to the plaintiff's title to his property, or its quality, or to his business in general . . . calculated to prevent others from dealing with him, or otherwise to interfere

23

with his relations with others to his disadvantage." *Beane v. McMullen*, 265 Md. 585, 607-08 (1972). "To support a claim for slander of title, a plaintiff must plead facts sufficient to show (1) a false statement, (2) that the false statement was communicated to someone else (publication), (3) malice, and (4) special damages." *Rounds v. Md.-Nat'l Cap. Park & Plan. Comm'n*, 441 Md. 621, 663 (2015). "Special damages are those which result in a pecuniary loss directly or immediately from the conduct of third persons." *Rite Aid Corp. v. Lake Shore Invs.*, 298 Md. 611, 625 (1984).

Here, Plaintiffs have alleged that Defendant committed slander of title by publishing an overbroad notice of *lis pendens*. (ECF No. 31-6, ¶¶ 116-18). Defendant argues that Plaintiffs' claim fails because the notice of *lis pendens* is subject to a litigation privilege and, in any event, Plaintiffs have not alleged facts sufficient to show all the elements of a slander of title claim. (ECF No. 40, at 17-19).

Although the Supreme Court of Maryland, in one case, cited a notice of *lis pendens* as an example of a document filed in a judicial proceeding to which an absolute privilege applies, *see Adams v. Peck*, 288 Md. 1, 3-4 (1980), the court is unaware of any Maryland case in which the doctrine was actually applied to a notice of *lis pendens*. There is currently a disagreement among states as to whether an absolute privilege, a qualified privilege,

24

or any privilege applies to statements made in a notice of *lis pendens*. *See In re Quinn*, 4 F.3d 986 (Table), No. 92-2366, 1993 WL 321583, at *7 n.14 (4th Cir. 1993) (discussing various state approaches); *see also* 13 *Robert M. Abrahams & Julian M. Wise*, *Bus. & Com. Litig. Fed. Cts.* § 148:25 (5th ed. 2022) (same).

It is unnecessary to resolve this question here, however, because Plaintiffs have failed to allege facts sufficient to support a slander of title claim. Most glaringly, they do not allege that they have suffered any special damages. Plaintiffs argue in their reply that their allegation that the *lis pendens* "can and will create a cloud on [their] property" suffices as an allegation of damages. (ECF No. 43, at 11). It does not. Plaintiffs needed to allege a pecuniary loss, and they failed to do so. Therefore, Plaintiffs' proposed amendment to add this claim would be futile.

In sum, Plaintiffs' motion to amend will be granted as to the following claims in its proposed Second Amended Complaint: Count I (Breach of Contract- Anticipatory Breach); Count II (Breach of Duty of Good Faith and Fair Dealing); and Count IV (Declaratory Judgment to Rescind Contract). Plaintiffs' proposed amendments to add the other claims would be futile because they fail to satisfy the requirements of the federal rules, so Plaintiffs' motion to amend will be denied as to those claims: Count II (Breach of APA Contract Terms); Count III (Declaratory Judgment against Escrow

Agent); Count V (Declaratory Judgment to Nullify *Lis Pendens*); Count VI (Maryland Deceptive Trade Practice); Count VII (Tortious Interference); and Count VIII (Slander of Title).[8]   Having determined that Counts I, II (to the extent it alleges a breach of the duty of good faith and fair dealing), and IV satisfy the federal rules as amended in the Second Amended Complaint, Defendant's motion to dismiss those claims as alleged in the First Amended Complaint will be denied as moot.

**B. Motion to Dismiss Defendant's Counterclaim**

Plaintiffs have moved to dismiss Defendant's first breach of contract counterclaim.[9]   The counterclaim alleges that the APA required Plaintiffs to do the following:

---

[8] Defendant argues that Plaintiffs' motion for leave to amend should be denied because it was brought in bad faith.  (ECF No. 40, at 23-24).  It argues that all Plaintiffs' proposed new claims are meritless, and Plaintiffs have taken inconsistent positions throughout the litigation.  While the court has determined that none of the proposed new claims state a plausible claim for relief, there is no reason to believe that Plaintiffs brought their motion in bad faith.  As previously noted, the federal rules allow parties to plead claims that are inconsistent with one another, and judicial estoppel only applies if a party's prior inconsistent position has been "accepted by the court." *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996).

[9] In evaluating this motion, the court considers the counterclaim and the exhibits attached thereto, which include the APA and copies of correspondence between the parties.  Plaintiffs attached an additional letter to their motion that was not attached to the counterclaim.  Because that letter was not explicitly referenced in or integral to the counterclaim, it will not be considered in evaluating this motion. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).  The same goes for

> (i) continue to operate the nursing home
> facility consistent with its operation at the
> time of execution of the APA; (ii) refrain
> from preventing Chapman from obtaining License
> Approval; (iii) apply for and obtain the
> Condominium Approval within 30 days after
> execution of the APA; (iv) negotiate in good
> faith the Condo Agreements with Chapman,
> including the condominium plat, master deed,
> by-laws and other documents under APA § 14(q);
> (v) obtain and deliver to Chapman an appraisal
> for the South Wooded Parcel; and (vi) convey
> the Property and Facility to Chapman.[10]

(ECF No. 22 ¶ 56).  Defendant alleges that Plaintiffs breached

those obligations, and they seek specific performance of the APA.

(*Id.* ¶¶ 57, 60).  Defendant's counterclaim defines the "Property"

as "the property located at 10200 La Plata Road, La Plata, Maryland

20646" and the "Facility" as "[t]he nursing facility . . . commonly

known as Sagepoint Senior Living Services."  (*Id.* ¶¶ 4-5).

Plaintiffs move to dismiss Defendant's first counterclaim,

arguing that Defendant's request for specific performance fails as

a matter of law because the parties' agreement did not identify

with specificity (1) the real property that was to be sold to

---

the documents Defendant attached to its response in opposition to
the motion and the document Plaintiffs attached to their reply.

[10] Although not discussed in the First Amended Complaint,
Defendant's counterclaim mentions an aspect of the APA involving
the appraisal of a "South Wooded Parcel."  The APA provides that
Defendant "shall have the option to purchase the South Wooded
Parcel" and that Plaintiffs "shall obtain an appraisal for the
value of the South Wooded Parcel and shall deliver said appraisal
to" Defendant after the effective date of the APA.  (ECF Nos. 2-
4, at 24, 27; 40-1, at 24, 27).

Defendant, (2) a second parcel of land that Defendant was to have the option to purchase, or (3) any terms of the condominium regime that was to be created in connection with the sale.  (ECF No. 28-1, at 1-2).  Thus, they argue, specific performance would be impossible.

A court can only award specific performance of a contract for the sale of real property if "the description []of the land used in the contract[] [is] such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby." *Martin v. Michaels*, 259 Md. 346, 349 (1970).  "Reasonable certainty is all that is required," however, and "[t]he description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary." *Id.* at 349-50.

Defendant argues that its first counterclaim states a plausible claim for relief.  It explains that, in entering into the APA, the parties clearly agreed that Plaintiffs would convey to Defendant the "skilled nursing facility and the real estate on which it sits," which is a "portion of [Plaintiffs'] real property located at 10200 La Plata Road, La Plata, Maryland 20646."  (ECF No. 32, at 2).  Defendant adds that, "[a]s for the South Wooded Parcel, discovery will show that at the time of the APA's execution, the parties had a clear idea of the metes and bounds of

that tract of land." (*Id.*). Defendant argues that "the APA's silence concerning" minute details of the Condominium Agreements "does not render the APA unenforceable," and "[i]n any event, whether the parties came to an agreement on all material terms required in the Condominium Agreements is a question of fact that has not been developed via discovery." (*Id.* at 2-3).

A similar reasoning applies here as to the fourth claim in Plaintiffs' proposed Second Amended Complaint. At this posture, accepting all allegations pled in Defendant's counterclaim as true, it cannot be said that Defendant's counterclaim is implausible. Defendant has alleged that the parties entered into a binding agreement that required Plaintiffs to convey the nursing facility to it, along with other obligations. While the counterclaim does not describe in great detail the allegedly agreed-upon boundaries of the property to be transferred, it is plausible that extrinsic evidence developed in discovery will allow the court to determine with reasonable certainty the boundaries of the property, should Defendant prevail on its counterclaim. The same goes for the property that the parties refer to as the "South Wooded Parcel." As for the terms of the Condominium Agreements, Defendant's counterclaim does not seek to enforce any particular condominium regime but rather claims that the APA required Plaintiffs to "apply for and obtain the Condominium Approval within 30 days after execution of the APA"

29

and "negotiate in good faith the Condo Agreements with" Defendant. Thus, Defendant's omission of specific terms of the Condominium Agreements in its counterclaim does not necessarily defeat its claim that Plaintiffs failed to fulfill those obligations under the APA.

In essence, Plaintiffs' motion to dismiss asks the courts to look beyond the allegations in Defendant's counterclaim and resolve the merits of the question at the heart of this case: whether there was an enforceable agreement as to all material terms.  This is not a proper use of a Rule 12(b)(6) motion.[11] Defendant is not required to prove its case at this juncture, nor is it required to forecast evidence sufficient to prove its case; it need only allege facts sufficient to state a claim.  *See Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012).  It has done so.

**IV. Conclusion**

For the foregoing reasons, Plaintiffs' motion for leave to amend will be granted in part and denied in part, Defendant's motion to dismiss the First Amended Complaint will be denied, and

---

[11] In any event, granting Plaintiffs' motion at this stage would be a strange result, given Plaintiffs' inconsistent position across the multiple versions of their complaint and within their proposed Second Amended Complaint as to whether there is an enforceable agreement for the sale of the nursing facility to Defendant.

Plaintiffs' motion to dismiss the first counterclaim will be denied.  A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge
