IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FAMILY OF CARE REAL ESTATE
HOLDING CO., INC., et al.

    v.

CHAPMAN PROPERTY, LLC

:
:
:
:
:
:
:

Civil Action No. DKC 23-574

### MEMORANDUM OPINION

Presently pending and ready for resolution in this breach of contract case involving a disputed sale of a nursing home is the motion for summary judgment on Count III of the counterclaim filed by Defendant and Counter Claimant Chapman Property, LLC. (ECF No. 44). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted in part as to the breach of the Side Agreement, but deferred as to relief or entry of judgment.

## I.  Background

Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiffs/Counterclaim Defendants Family of Care Real Estate Holding Co. and Charles County Nursing and Rehabilitation Center, Inc. ("Sellers"), the non-moving parties. On September 12, 2022, Sellers and Chapman Property, LLC ("Purchaser") entered into an

Asset Purchase Agreement (the "APA") for the sale of a skilled nursing facility located in La Plata, Maryland, currently doing business under the name "Sagepoint Senior Living Services." (ECF No. 22-1, at 2, 3, 44). The facility is located on a sixteen-acre property (the "Property") on which Sellers also operate an assisted living facility and adult daycare, which are not included in the sale that is the subject of this lawsuit. (ECF Nos. 22-1, at 24; 45-1, at 2 fn.2). The APA provided for the deposit of funds by Purchaser with an escrow agent ("Escrow Agent"), (ECF No. 22-1, at 7), and the parties executed a separate escrow agreement (the "Escrow Agreement"), also on September 12, 2022, (ECF No. 31-5, at 3-5). Chapman initially deposited $1,000,000 with the Escrow Agent, (ECF No. 31-5, at 3), and later deposited an additional $350,000 when it exercised its option to extend the closing date, (ECF No. 44-2, at 3, 10-11).

On January 17, 2023, counsel for Sellers sent counsel for Purchaser a letter stating that Purchaser made a "definite, specific, positive, and unconditional repudiation of [its] obligations . . . under the APA" because Purchaser expressed that it "had not secured funding necessary to enable it to pay the full purchase price" and failed to "confirm in writing" that "Purchaser ha[d] the ability to fund the entire Purchase Price." (ECF No. 31-5, at 14-15). Counsel for Sellers also "notifie[d] Purchaser that

it [wa]s in breach of the implied covenant of good faith and fair dealing" because it failed to

> (i) timely provide comments to multiple drafts of documents required to be finalized prior to Closing, including but not limited to:  Condo Agreements and multiple restrictive covenants; (ii) timely fulfill of Purchaser's obligations with respect to contracts to be either terminated or assumed; and also due to numerous other actions by Purchaser intended to delay Closing notwithstanding the absence of any right under the APA to extend closing past February 1, 2023.

(*Id.* at 15).  Thereafter, the parties engaged in negotiations to reinstate and amend the APA.  (ECF Nos. 45-1 ¶ 10; 45-3, at 1-3; 45-4, at 1-4; 53-1, at 2-21).

Sellers allege that they accepted Purchaser's offer in writing to reinstate the APA based on amended terms outlined in the parties' emails on February 10, 2023.  (ECF Nos. 45 ¶ 13; 45-3, at 1) ("Seller will accept the request for the 90' addition to Lot one as you describe on the attached image . . . and all other terms on the term sheet I last sent.  The parties are now agreed on all terms required to reinstate and amend the APA.").  That same day, counsel for Purchaser wrote, "Thank you for the response. I forwarded it to our clients."  (ECF No.  53-1, at 15).  On February 12, 2023, counsel for Sellers responded, "Since my client accepted your client's final offer on terms, we are agreed on all terms as of Friday."  (*Id.* at 14).  Also on February 12, 2023, counsel for Purchaser replied, "I spoke with our clients.  We are

interested in reviewing your amendment as soon as possible to determine that we have a deal.  We will release the $400,000 if you all will agree to return that amount to escrow if we cannot agree on the amendment within 5 days, or it will accrue interest at 18%."  (*Id.*).  Counsel for Sellers reiterated, "Your client made an offer of terms to which we agreed.  You will have an opportunity to review the amendment and provide any comments.  The amendment will only contain the terms to which we agreed.  Are you suggesting there is no agreement?"  (*Id.* at 13).  Counsel for Sellers then emailed a revised draft Reinstatement and Second Amendment of the APA ("Second Amendment").  (*Id.* at 12).

On February 13, 2023, counsel for Purchaser emailed counsel for Sellers that he did not "see any language [in the draft] about a return of the $400,000 to escrow if we cannot agree on the amendment" and offered to "draft a simple amendment stating as much[.]" (*Id.* at 12).  He then sent the amendment (the "Side Agreement"), (*Id.* at 11), and both parties executed it on February 13, 2023, (ECF Nos. 22-7, at 2-4; 44-2 ¶ 5).  The Side Agreement provides, in part:

> 2. **Agreement to Return the Released Funds to Escrow**. Seller agrees and acknowledges that Purchaser's instruction to the Escrow Agreement [sic, Agent] is conditioned upon Seller's agreement to immediately return the Released Funds to the Deposit Escrow Agent in the event that Purchaser and Seller are unable to finalize and execute the Second Amendment by the end of business on February 17, 2023.

> Seller shall cooperate with respect to any
> requirement of the Deposit Escrow Agent to
> immediately return the Released Funds to the
> Escrow Agent.
>
> 3. **Deadline to Amend APA**. Unless the Second
> Amendment is finalized and fully executed by
> all parties on or before February 17, 2023
> (the "Amendment Deadline"), Seller shall
> immediately return the Released Funds to the
> Deposit Escrow Agent.  Upon the execution of
> the Second Amendment, the provisions of the
> Second Amendment shall control and shall
> supersede the provisions of this Side
> Agreement.

(ECF No. 22-7, at 2-3).

On February 14, 2023, counsel for Purchaser sent a "list of agreed upon terms" and asked counsel for Sellers to "confirm you are in agreement with this list." (ECF No. 53-1, at 7-9).  Counsel for Sellers highlighted various items on the list and asked counsel for Purchaser to "identify where in the agreed terms these terms have been agreed by both parties." (*Id.* at 5).  Counsel for Purchaser replied with a description of when each item was discussed, or, if had not been agreed upon, that it "is a simple closing issue" or not "controversial." (ECF No. 45-4, at 1-4).  Sellers argue the list included "additional, onerous terms that Sellers had either previously rejected and/or that the parties never negotiated." (ECF Nos. 45, at 6; 45-1 ¶ 12).  Purchaser never executed the Second Amendment. (ECF No. 44-2 ¶ 7).

On March 1, 2023, Sellers filed suit in state court for injunctive relief and breach of contract. (ECF No. 3, at 2-3, 9).

5

Purchaser removed the action to this court the next day. (ECF No. 1, at 5). Since then, Sellers have amended their complaint twice, (ECF Nos. 17; 48), and Purchaser has asserted counterclaims, (ECF No. 22). After the court ruled on an earlier motion to dismiss, (ECF No. 46), the following claims are at issue. The Second Amended Complaint filed by Sellers contains Count I (Breach of Contract-Anticipatory Breach of the APA); Count II (Breach of Duty of Good Faith and Fair Dealing); and Count IV (Declaratory Judgment-Rescission of the APA). (ECF Nos. 46, at 25; 48, at 15-18). Purchaser's Counterclaim asserts Count I (Breach of Contract seeking specific performance of the APA); Count II (Anticipatory Breach of the APA); and Count III (Breach of the Side Agreement). (ECF No. 22, at 11-15).

## II.  Standard of Review

Parties "may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed.R.Civ.P. 56(b). A court may grant summary judgment if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). The court must "view the evidence in the light most favorable to . . . the nonmovant[.]" *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). "[T]he nonmoving party nonetheless

6

must offer some 'concrete evidence from which a reasonable juror could return a verdict in his [or her] favor.'" *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)).

## III. Analysis

Purchaser seeks summary judgment on Count III of its counterclaim, which asserts that Sellers breached the Side Agreement by failing to return the $400,000 to Purchaser[1] because the parties did not execute a Second Amendment by February 17, 2023. (ECF Nos. 22 ¶¶ 68-71; 44-1 ¶ 10). Purchaser asserts that it is entitled to a return of the $400,000 deposit, interest at the rate of 18% per year, and attorneys' fees. (ECF No. 44-1 ¶¶ 11-12).

Sellers argue that they were not obligated to return the deposit because Purchaser unilaterally and wrongfully refused to execute the Second Amendment, the terms of which had been agreed to by the parties. (ECF No. 45 ¶ 18). Sellers contend that Purchaser (1) introduced new terms after the parties came to an agreement; (2) wrongfully refused to execute the agreement; (3) misappropriated Sellers' intellectual property by erecting a public website advertising that Purchaser was providing post-acute

---

[1] The Side Agreement required the funds to be returned to the Escrow Agent, not to Purchaser. (ECF No. 22 ¶ 49; ECF No. 22-7, at 2-3).

care services at the Property and containing fraudulent testimonials from "Chapman Rehab" patients; (4) informed Google that Purchaser already owned the Property such that Google referred the public to "Chapman Rehabilitation & Healthcare Center"; (5) co-opted and converted Sellers' license information to obtain a unique NPI number (identification number for covered health care providers to send health information electronically) which was posted on Purchaser's website; (6) failed to notify the NPI Enumerator that Purchaser failed to close the deal, thus maintaining a false application; and (7) placed an overbroad *lis pendens* on the entire 16-acre campus, including 13 acres Purchaser never contemplated buying. (ECF Nos. 31 ¶¶ 2-13; 45 ¶¶ 18-21; 48 ¶¶ 56-71).

In support of their contention that the parties reached an agreement before February 17, 2023, Sellers maintain that Purchaser emailed a final offer which "included a fully developed term sheet and an email chain that modified the final three items of dispute between the parties," and that Sellers accepted the offer in a February 10, 2023 email. (ECF No. 45 ¶ 27; *see also* ECF Nos. 45-3, at 1-2; 53-1, at 15-16). While Sellers do not specifically deny that they have refused to return the deposit, they do argue that the Side Agreement provides for the release of the deposit only if the parties are "unable to finalize and execute the Second Amendment by the end of business on February 17, 2023."

8

(ECF Nos. 22-7, at 2; 45 ¶ 18).  Sellers contend that Purchaser was "*able . . .* to execute the reinstatement and amendment of the APA" but "*refused* to do so despite the written agreement containing all material terms after weeks of negotiations." (ECF No. 45 ¶ 18) (emphasis added).

"Under Maryland law, the elements of a claim for breach of contract are "'contractual obligation, breach, and damages.'" *Kantsevoy v. LumenR LLC*, 301 F.Supp.3d 577, 596 (D.Md. 2018) (quoting *Tucker v. Specialized Loan Servicing, LLC*, 83 F.Supp.3d 635, 655 (D.Md. 2015)).  "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."  *Jaguar Land Rover N. Am., LLC v. Manhattan Imported Cars, Inc.*, 738 F.Supp.2d 640, 649 (D.Md. 2010) (citing *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)).  Maryland law requires that a plaintiff "alleging a breach of contract 'must of necessity allege with certainty and definiteness' *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant."  *Jaigobin v. U.S. Bank, NA*, No. 18-cv-1776-DKC, 2019 WL 4598000, at *7 (D.Md. Sept. 23, 2019), *aff'd*, 797 F.App'x 776 (4th Cir. 2020) (quoting *RRC Northeast, LLC v. BAA Maryland, Inc.*, 412 Md. 638, 655 (2010)) (emphasis in original).  A plaintiff must also show that it itself is not in material breach of the contract.  *See Virginia Elec. &*

*Power Co. v. Bransen Energy, Inc.*, 850 F.3d 645, 655 (4th Cir. 2017) ("'[A] party who commits the first breach of contract,' if material, 'is not entitled to enforce the contract.'") (quoting *Horton v. Horton*, 254 Va. 111, 115 (1997)).

In interpreting contract terms, Maryland applies the objective theory of contracts, where:

> [A] court is to determine from the language of the agreement, what a reasonable person in the position of the parties would have understood the contract to mean at the time the contract was entered into; when the language of the contract is plain and unambiguous, there is no room for construction as the courts will presume that the parties meant what they expressed.

*Stewart v. Morgan State Univ.*, 46 F.Supp.3d 590, 601 (D.Md. 2014), *aff'd*, 606 F.App'x 48 (4th Cir. 2015) (*citing Mathis v. Hargrove*, 166 Md.App. 286, 319 (2005)). Maryland courts "define[] ambiguity as extant when, to a reasonable person, the language of the document 'is susceptible to more than one meaning or is of doubtful meaning.'" *Falls Garden Condo. Ass'n, Inc. v. Falls Homeowners Ass'n, Inc.*, 441 Md. 290, 303 (2015) (quoting *Cochran v. Norkunas*, 398 Md. 1, 17 (2007)). A court's "primary consideration, when interpreting a contract's terms, is the 'customary, ordinary, and accepted meaning' of the language used." *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 301 (2004) (quoting *Lloyd E. Mitchell, Inc. v. Maryland Cas. Co.*, 324 Md. 44, 56-57 (1991)).

Sellers contend that they are not obligated to return the money because Purchaser was *capable* (or not unable) of executing the Second Amendment but chose not to. (ECF No. 45 ¶ 18). On the other hand, Purchaser contends that the parties were unable to reach the level of agreement necessary to execute the Second Amendment and the deposit must be returned. (ECF No. 53 ¶¶ 10-15).

The parties, obviously, differ a bit in their interpretations of the word "unable." Sellers assert that the parties were not "unable" to execute a Second Amendment; rather, Purchaser was able to execute the document and refused to do so. (ECF No. 45 ¶ 18). Purchaser refers to the Merriam-Webster Dictionary definition of "unable" as "incapable or 'lacking capacity, ability, or qualification for the purpose or end in view,'" (ECF No. 53 ¶ 14, n.6), and argues that it was "unable" to sign where no agreement had been reached, (ECF No. 53 ¶ 14). This difference of interpretation does not necessarily mean that the term is ambiguous. *Balt. Scrap Corp. v. RLI Ins. Co.*, 493 F.Supp.3d 433, 447 (D.Md. 2020).

To analyze the problem properly, one must look at the Side Agreement as a whole. It is a basic tenet of contract interpretation that the language of the entire agreement is examined, not "merely a portion thereof." *Plank v. Cherneski*, 469

Md. 548, 617 (2020) (quoting *Nova Rsch., Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2008)).

The Side Agreement references the February 17, 2023 due date twice.  In the first instance, the contract provides:

> Purchaser's instruction to the Escrow Agreement [sic, Agent] is conditioned upon Seller's agreement to immediately return the Released Funds to the Deposit Escrow Agent in the event that Purchaser and Seller are unable to finalize and execute the Second Amendment by the end of business on February 17, 2023.

(ECF No. 22-7, at 2).  In the second instance, the contract provides:

> Unless the Second Amendment is finalized and fully executed by all parties on or before February 17, 2023 (the "Amendment Deadline"), Seller shall immediately return the Released Funds to the Deposit Escrow Agent.

(*Id.* at 3).  The first provision includes the disputed term "unable."  The second provision, however, leaves no room for interpretation.  It lacks the word "unable" and is essentially a simple if-then statement:  If the parties do not execute the Second Amendment, then Sellers must return the deposit.  The second provision provides context for determining the meaning of the first provision.  The only way to interpret and harmonize the two sentences is that the phrase "in the event that Purchaser and Seller are unable to finalize and execute the Second Amendment" means the deposit must be returned if *for any reason* the Second Amendment is not executed by February 17, 2023.  The parties did

not execute a Second Amendment by February 17, 2023; hence, the Side Agreement obligates Sellers to return the deposit. (ECF No. 22-7, at 2-3). Because Sellers have not done so, they are in breach of the Side Agreement.

Sellers appear to recognize that an agreement to the terms of a Second Amendment is insufficient by itself to constitute a binding agreement due to the statute of frauds. Indeed, neither party is suing to enforce a purported Second Amendment. The contract the parties were attempting to reach is a contract for the sale of land, and it must therefore satisfy the statute of frauds. *Fedder Dev. Corp. v. FB Hagerstown, LLC*, 181 F. App'x 384, 387 (4th Cir. 2006); *see also* Md. Code Real Prop. § 5-104. To be enforceable under the statute of frauds, the contract must be:

> (1) a writing (formal or informal); (2) signed by the party to be charged or by his agent; (3) naming each party to the contract with sufficient definiteness to identify him or his agent;(4) describing the land or other property to which the contract relates; and (5) setting forth the terms and conditions of all the promises constituting the contract made between the parties.

*Fedder*, 181 F.App'x at 388 (quoting *Beall v. Beall*, 291 Md. 224, 228-29 (1981). The parties clearly intended to reach agreement, if at all, in the form of a complete written document signed by all parties.

Sellers argue that there is a material dispute as to whether Purchaser breached the Side Agreement by engaging in various types

13

of bad faith such as introducing new terms after the parties came to an agreement, refusing to execute the agreement, representing to the public that Purchaser already owned the Property, and placing an overbroad *lis pendens* on the Property.  (ECF Nos. 31 ¶¶ 6-3; 45 ¶¶ 18-21; 48 ¶¶ 56-71).  In advancing this argument, Sellers do not identify which provision of the Side Agreement Purchaser purportedly breached.  Instead, they aver that Purchaser's alleged breach of the covenant of good faith and fair dealing amounts to a material breach of the Side Agreement.

"Maryland recognizes that every contract imposes a duty of good faith and fair dealing in its performance." *Doe v. Maryland*, No. 20-cv-1227-ELH, 2021 WL 1174707, at *37 (D.Md. Mar. 29, 2021) (citing *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 534 (1964)).  "However, Maryland courts have not explicitly recognized a separate cause of action for breach of this duty." *Maryland Physician's Edge, LLC v. Behram*, No. 17-cv-2756-DKC, 2019 WL 4573417, at *8 (D.Md. Sept. 20, 2019) (quoting *Abt Associates, Inc. v. JHPIEGO Corp.*, 104 F.Supp.2d 523, 534 (D.Md. 2000)). "[T]he covenant of good faith and fair dealing 'does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under [the contract].'" *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 182-83 (4th Cir. 2000) (quoting *Parker v. Columbia Bank,* 91 Md.App. 346, 604 A.2d 521, 531 (1992)) (alteration in original).  Rather, the duty

14

"simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Parker*, 91 Md.App. at 366. "A breach of the covenant of good faith and fair dealing supports another cause of action, such as breach of contract" and is thus "merely part of an action for breach of contract." *Zos v. Wells Fargo Bank, N.A.*, No. 16-cv-00466-GJH, 2017 WL 221787, at *3 (D.Md. Jan. 18, 2017) (citing *Mount Vernon v. Branch,* 170 Md.App. 457, 471-72 (2006)).

Sellers have not asserted an independent breach of contract action. None of Purchaser's alleged breaches arise from a particular term in the Side Agreement. Nor do Sellers assert that Purchaser prevented Sellers from performing their obligations under the Side Agreement. To the contrary, Purchaser filed this motion to force Sellers to perform *their* obligations under the Side Agreement. Sellers instead argue that Purchaser frustrated their "right to receive the fruits of weeks of negotiations that culminated in an enforceable settlement agreement." (ECF No. 45 ¶ 26).

The United States Court of Appeals for the Fourth Circuit has ruled that "under the covenant of good faith and fair dealing, a party impliedly promises to refrain from doing anything that will have the effect of injuring or frustrating the right of the other party to receive the fruits of the contract between them." *E.*

15

*Shore Markets*, 213 F.3d at 184.  The Side Agreement was an effort to incentivize both parties to negotiate and reach a final Second Amendment.  Sellers received the fruit of the Side Agreement—the immediate, if possibly temporary, release of a portion of the deposit from Purchaser to Sellers.  (ECF Nos. 22-7, at 2; 53-1, at 7-8).  In exchange, they agreed to return the deposit if the parties "are unable to finalize and execute the Second Amendment by the end of business on February 17, 2023."  (ECF No. 22-7, at 2).  Now, Purchaser simply requests to receive *its* fruit of the deal.  Even if Purchaser engaged in the conduct alleged, *e.g.*, by representing to the public that it already owns the Property, Sellers have not provided facts showing that Purchaser would have violated any contractual duty arising from the Side Agreement specifically.  "Absent some contractual obligation that [Purchaser] breached, 'all that is left is a standalone violation of the duty of good faith, 'which is not recognized as a cause of action in Maryland."  *Lara v. Suntrust Mortg. Inc.*, No. 16-cv-0145-DKC, 2016 WL 3753155, at *5 (D.Md. July 14, 2016) (quoting *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, No. 11-cv-1948-DKC, 2014 WL 3865993, at *5 (D.Md. Aug. 5, 2014)).  Sellers therefore have not shown there is a material dispute precluding summary judgment for Purchaser as to the breach of the Side Agreement.

16

The relief requested in Counterclaim III is entry of a judgment "providing" that Sellers materially breached the Side Agreement by refusing to return the $400,000; that Sellers' failure to return the funds constitutes a default under the APA; that Purchaser is entitled to recover as damages the funds, plus pre- and post-judgment interest and expenses, and that the $400,000 accrues interest at the rate of 18% until "paid in full." (ECF No. 22, at 14-15). The form order attached to the motion for summary judgment seeks somewhat different relief. It seeks an order granting summary judgment and directing Sellers to return the $400,000 to the Escrow Agent within five days and to pay interest at $197.26 per day until the funds are returned to escrow, as well as awarding it attorneys' fees and costs and permitting it to file supporting documentation. (ECF No. 44-3).

In addition, the court must consider whether to enter judgment on this claim now or defer until a final judgment on all claims can be entered. Rule 54(b) provides:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Because of the importance of preventing piecemeal appeals of a case, a "Rule 54(b) certification is recognized as the exception

rather than the norm. It should neither be granted routinely, nor as an accommodation to counsel." *Braswell Shipyards, Inc. v. Beazer East, Inc.,* 2 F.3d 1331, 1335 (4th Cir. 1993) (citation omitted). Furthermore, "it is settled that certification of a judgment as to a claim or party in a multi-claim or multi-party suit is disfavored in the Fourth Circuit." *Bell Microproducts, Inc. v. Global-Insync, Inc.,* 20 F.Supp.2d 938, 942 (E.D.Va.1998) (citing *Lyles v. Popkin,* 36 F.3d 1093, 1994 WL 525824, at *1 (4th Cir. 1994).

The parties have not addressed this issue.

## IV.  Conclusion

For the foregoing reasons, Chapman Property LLC's motion for summary judgment on Count III of its counterclaim will be granted in part as to the breach, but deferred as to entry of judgment.  A separate order will follow.

```
                        /s/
          DEBORAH K. CHASANOW
          United States District Judge
```

18